IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASON HAUK, et al.  :
:
v.  :
: Civil Action No. CCB-09-3238
LVNV FUNDING, LLC  :
:

...o0o...

## MEMORANDUM

Now pending before the court is a motion to dismiss filed by defendant LVNV Funding, LLC ("LVNV"). Plaintiffs Jason Hauk and Freddy Velazquez have sued LVNV, a debt collection company organized in Delaware, alleging violations of federal and state debt collection statutes based on lawsuits LVNV filed in Maryland to collect debts it had purchased while those debts were in default. The plaintiffs allege violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann., Com. Law § 15-201 *et seq.*, and the Maryland Consumer Protection Act (MCPA), *id.* § 13-301 *et seq.* They seek certification of a class action based on these alleged violations, and seek compensatory damages, injunctive relief, and declaratory relief. This court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. For the reasons stated below, the motion to dismiss will be denied.

## BACKGROUND

The plaintiffs claim that LVNV violated federal and state law when it filed complaints in Maryland state court against Hauk and Velazquez, as well as each of the putative class members. They allege the following facts. LVNV purchased the debts of Hauk and Velazquez from their

1

creditors at a time when the debts were in default (Am. Compl. ¶2, 15, 22.) LVNV had failed to become licensed as a "collection agency" by the Maryland Commissioner of Financial Regulation prior to filing the lawsuits, as required by Maryland law, Md. Code Ann., Bus. Reg. §7-301. (*Id*. ¶27, 29, 34). LVNV filed lawsuits against Hauk and Velazquez to recover the debt (*Id*. ¶14), against Hauk in May 2008 ("the Hauk suit") and against Velazquez in July 2009 ("the Velazquez suit"), each in the District Court of Maryland for Frederick County. The plaintiffs claim they suffered damages in the form of attorney's fees, damage to credit, and emotional distress.

The amended complaint alleges that, in the Hauk suit, LVNV filed an affidavit stating that Hauk owed a certain amount to LVNV (*id*. ¶16), served interrogatories on Hauk that did not include notices allegedly required by the FDCPA (*id*. ¶19), and did not provide Hauk with "a written notice that he had the right to request verification of the debt, dispute the debt or other notices required by the FDCPA, 15 U.S.C. §1692g," either at the time of filing the complaint or in interrogatories it served in March 2009. (*Id*. ¶18.) The court entered a judgment in favor of Hauk, which LVNV did not appeal. (*Id*. ¶20.) The plaintiffs allege that in the Velazquez suit, LVNV filed an affidavit stating that LVNV had a right to collect the debt. (*Id*. ¶23.) The complaint was dismissed after Velazquez provided notice of his intention to defend the lawsuit. (Am. Compl. ¶25.)

On October 27, 2009, the plaintiffs filed a suit against LVNV in the Circuit Court for Frederick County, Maryland. LVNV removed the case to federal court on December 7, 2009. The plaintiffs filed an amended complaint on February 3, 2010, which LVNV moved to dismiss on March 1, 2010. LVNV makes several arguments, including a contention that the Maryland licensing statute violates the dormant Commerce Clause of the U.S. Constitution.

## ANALYSIS

**I.     Standard of Review**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## II. The Commerce Clause

The Commerce Clause of the U.S. Constitution provides that Congress "shall have Power . . . To regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. This affirmative authority to regulate commerce "carries with it an implied 'dormant' aspect[,] . . . 'a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce.'" *Beskind v. Easley*, 325 F.3d 506, 514 (4th Cir. 2003) (quoting *Dennis v. Higgins*, 498 U.S. 439, 447 (1991)). Determining whether a state law violates the dormant Commerce Clause involves a two-tier analysis. *Brown v. Hovatter*, 561 F.3d 357, 363 (4th Cir. 2009). On the first tier, a court "inquires whether the state law *discriminates* against interstate commerce." *Id.* (emphasis in original). A state law impermissibly discriminates against interstate commerce when it employs a "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994). If the law discriminates, it is "virtually *per se* invalid," and will survive only if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (quoting *Oregon Waste Sys.*, 511 U.S. at 99). If the law does not unjustifiably discriminate against interstate commerce, a court then proceeds to the second tier, on which it inquires "whether the state law[] 'unjustifiably . . . burden[s] the interstate flow of articles of commerce.'" *Hovatter*, 561 F.3d at 363 (quoting *Oregon Waste Sys.,* 511 U.S. at 98). The challenged law generally "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The two-tier analysis serves to guide courts on the "narrow path" to "rebuff[] attempts of states to advance their own commercial interests by

curtailing the movement of articles of commerce, either into or out of the state, while generally supporting their right to impose even burdensome regulations in the interest of local health and safety." *Id.* (quoting *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949)).

Maryland law requires that "a person must have a license whenever the person does business as a collection agency in the State." Md. Code Ann., Bus. Reg. § 7-301(a). LVNV argues that the licensing statute, as applied to LVNV, fails on both tiers of the dormant Commerce Clause analysis because it discriminates against interstate commerce in favor of local interests and imposes a burden on interstate commerce that exceeds Maryland's interest in imposing the licensing requirement. LVNV argues that because the licensing statute violates the Commerce Clause, and because a finding that LVNV was required to be licensed is essential to the plaintiffs' MCPA and MCDCA claims as well the FDCPA claims under 15 U.S.C. §§ 1692e(5) and 1692f, those claims should be dismissed.[1]

The Commerce Clause, however, does not render the Maryland statutes unconstitutional as applied to LVNV, at least for the purposes of this motion to dismiss. With regard to the first tier of the analysis, a state law may be found to discriminate against interstate commerce in any one three ways: "facially, in its practical effect, or in its purpose." *Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005) (quoting *Envtl. Tech. Council v. Sierra Club,* 98 F.3d 774, 785 (4th Cir. 1996)). On its face, the statute here applies to all

---

[1] As discussed below, the MCPA prohibits "unfair or deceptive trade practices," Md. Code Ann., Com. Law § 13-301, one example of which is any violation of a provision of the MCDCA. *Id.* § 13-301(14)(iii). The MCDCA, in turn, provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* § 14-202(8). The plaintiffs argue that when LVNV sued them, it had "knowledge that the right [to sue them to collect the debts] [did] not exist" because it did not hold a license as required by state law. Therefore, a violation of the licensing statute is a prerequisite to the plaintiffs' MCPA and MCDCA claims. Similarly, a violation of the licensing statute is a prerequisite to the claims under 15 U.S.C. § 1692e(5), which prohibits debt collectors from making a "threat to take [an] action that cannot legally be taken," and 15 U.S.C. § 1692f , which prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." LVNV also argues that the Commerce Clause compels dismissal of the claims under 15 U.S.C. §§ 1692e(11) and 1692g, which impose disclosure requirements on debt collectors. These disclosure claims, however, are independent of the Maryland licensing requirement and thus are unaffected by the Commerce Clause challenge.

collection agencies operating in Maryland, and therefore does not facially discriminate against out-of-state agencies. With regard to its practical effect, LVNV's challenge cannot be resolved on a motion to dismiss, as an assessment of the statute's practical effect is not evident from the faces of the statute and the complaint. Finally, LVNV has neither argued that Maryland's purpose in enacting the licensing statute was to discriminate against out-of-state collection agencies, nor pointed to any statutory provision or legislative history demonstrating such a purpose. Therefore, the claims will not be dismissed on grounds that the licensing statute discriminates against interstate commerce.

The Maryland statutes also do not unreasonably burden interstate commerce. As stated above, a state statute unreasonably burdens interstate commerce where "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. LVNV appears to argue that the MCPA and MCDCA unduly burden interstate commerce by requiring out-of-state debt collection companies like LVNV to be licensed in Maryland even though LVNV does not "transact business" in Maryland; therefore, any interests Maryland might have in applying the licensing requirement to out-of-state collection agencies would be outweighed by the burden on LVNV's ability, as an out-of-state company, to collect debts in Maryland. (Def.'s Mem. at 14.)

This argument fails for two reasons. First, the amended complaint alleges that LVNV *has* transacted business in Maryland, namely by acquiring debts already in default and collecting them by filing suit through its attorneys against Hauk and Velazquez in Maryland state court. While LVNV argues that filing these lawsuits do not constitute "doing business" in Maryland, this is highly unlikely; after all, filing suit against defaulted debtors is a core business of debt collectors. *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (holding that the FDCPA applies to

"the litigating activities of lawyers"); *Sayeed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007) (holding that "there is no blanket common law litigation immunity from the requirements of the FDCPA"). In any event, it is not clear as a matter of law from the face of the complaint that LVNV is not engaging in business in Maryland.

Second, irrespective of the extent of LVNV's business in Maryland, the burden imposed on interstate commerce by the Maryland statutes is not "clearly excessive in relation to the putative local benefits," at least based on the facts alleged by the plaintiffs. Maryland has an interest in requiring that companies seeking to conduct business as debt collectors apply for licenses in order to permit the state to review their qualifications as debt collectors, to ease the enforcement of debt collection statutes, and to protect debtors from unfair practices. It is far from clear from the face of the complaint that the time and expense of applying for a debt collector's license is excessive in relation to Maryland's interests in requiring that debt collectors apply for licenses. *Cf. Yamaha Motor Corp.*, 401 F.3d at 566, 573 (holding unconstitutional as applied a Virginia statute that "allow[ed] any existing franchised [motorcycle] dealer in Virginia to protest the establishment of a new dealership for the same brand anywhere in the Commonwealth," where "even a frivolous protest to which the Commissioner [of the Virginia Department of Motor Vehicles] responds with uncharacteristic dispatch *could take years to resolve*") (emphasis in original). LVNV remains free at a later stage to present evidence that the burden of the licensing requirement is clearly excessive to the local benefits. *See, e.g.*, *id.* at 563, 565-66, 573-74 (based in part on evidence presented in a three-day bench trial, holding that the motocycle dealer law imposed a burden on market entry by out-of-state dealers that clearly exceeded the benefit to in-state dealers). For the purposes of the motion to dismiss, however, it

has not shown that the plaintiffs have failed to state a claim by virtue of the requirement's burden on interstate commerce.

Finally, while LVNV cites *Allenberg Cotton Company v. Pittman*, 419 U.S. 20 (1974), in support of its Commerce Clause challenge, the case does not provide authority for invalidating the Maryland licensing statute. In *Allenberg Cotton*, a Tennessee cotton merchant challenged a Mississippi statute that required any "foreign corporation doing business in the state" to register with the state; a corporation failing to register was barred from suing in Mississippi state courts. *Id*. at 21 n.1 (citing Miss. Code Ann. § 79-3-247 (1972)). The statute did not discriminate against out-of-state corporations. *See id.* at 40 (Rehnquist, J., dissenting) ("Mississippi's qualification statute is concededly not discriminatory. Domestic corporations organized under her laws must submit themselves to her taxing jurisdiction, to service of process within the State, and to a number of other incidents of corporate existence which state law may impose.") Nonetheless, the Court held that Mississippi could not constitutionally apply the denial-of-a-forum sanction to the Tennessee merchant because the merchant's business was exclusively interstate in character, and thus the Commerce Clause barred the state from regulating it. *Id.* at 33 ("In short, appellant's contacts with Mississippi do not exhibit the sort of localization or intrastate character which we have required in situations where a State seeks to require a foreign corporation to qualify to do business.").

Assuming without deciding that the *Allenberg Cotton* approach remains applicable in certain cases despite the Court's more recent use of the two-tier analysis described above, *Allenberg Cotton* is distinguishable. In *Allenberg Cotton*, the Court emphasized that the business being regulated was part of an "intricate interstate" commodities market. 419 U.S. at 29. In contrast, state licensing requirements for debt collectors "have long been viewed as a proper

8

matter for regulation by the states." *Silver v. Woolf*, 694 F.2d 8, 12 (2d Cir. 1982). "[D]ebt collection practices are intimately related to the use of state courts," and, based on the savings provisions of the FDCPA, "there are affirmative indications that Congress believes state regulation of debt collection agencies to be desirable." *Id.*

LVNV also cites cases such as *G.E.M. v. Plough*, 228 Md. 484 (1962), and *S.A.S. Personnel Consultants, Inc. v. Pat-Pan Inc.*, 286 Md. 335 (1979), which interpret the Maryland "closed-door" statute, which, like the statute challenged in *Allenberg Cotton*, penalizes foreign corporations doing business in Maryland that fail to register with the state. In each case, the Maryland Court of Appeals interpreted the meaning of "doing business" under the corporate registration statute, holding that the out-of-state pharmaceutical manufacturer in *G.E.M.* and the out-of-state employment agency in *S.A.S. Personnel Consultants* were not "doing business" in Maryland and thus were not subject to the registration requirement. *See G.E.M. v. Plough*, 180 A.2d at 481; *S.A.S. Personnel Consultants*, 286 Md. 335 at 1143. The court thus did not consider in either case whether the statute violated the dormant Commerce Clause. As noted earlier, in this case it is not clear as a matter of law that LVNV is not "do[ing] business" in Maryland for purposes of the licensing statute.

For these reasons, LVNV's motion to dismiss the amended complaint on Commerce Clause grounds will be denied.

### III.    FDCPA claims (Count IV)

Plaintiffs allege that LVNV violated the FDCPA in three ways: by using "unfair or unconscionable means to collect or attempt to collect [a] debt," as prohibited by 15 U.S.C. § 1692f; by failing to make certain disclosures required by 15 U.S.C. §§ 1692e(11) and 1692g; and

9

by making a "threat to take [an] action that cannot legally be taken" in violation of 15 U.S.C. § 1692e(5).

### A. Unfair practices – 15 U.S.C. § 1692f

The "Unfair practices" section of the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The statute does not define "unfair or unconscionable," but it does provide a non-exhaustive list of conduct that violates the section. *See id.* As stated above, in Maryland, "a person must have a license whenever the person does business as a collection agency in the State." MD. CODE ANN., BUS. REG. § 7-301(a). The plaintiffs allege that when LVNV filed lawsuits against them, it wsa "operating illegally without a mandatory license" and therefore violated §1692f. (Am. Compl. ¶70.) At oral argument, counsel for LVNV rightly conceded that if the Commerce Clause argument were not successful, plaintiffs have stated a claim under § 1692f. As the Eleventh Circuit recently concluded, a debt collector's failure to register under a state debt collection law "is an appropriate consideration in deciding whether [its] 'means' of collection were 'unfair or unconscionable.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010). The motion to dismiss the § 1692f claim therefore will be denied.

### B. Mandatory disclosures – 15 U.S.C. §§ 1692e(11), 1692g

The FDCPA requires that a debt collector make certain disclosures in its communications with debtors. In its "initial written communication," a debt collector must disclose that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11). In any "subsequent communications," a debt collector must disclose that the communication is "from a debt collector." *Id.* In addition, § 1692g requires that within five days of the initial communication, "a debt collector shall, unless the following

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice" that includes the details of the debt and information about how to dispute the debt. Exemptions apply under both sections, however, for certain legal pleadings. Section 1692e(11) does not apply to "formal pleading[s] made in connection with a legal action," *id.*, and § 1692g does not apply to "formal pleading[s] in a civil action." *Id.* § 1692g(d).

Hauk alleges that LVNV violated §§ 1692e(11) and 1692g(a) when it "served interrogatories on Hauk in March, 2009" because it "failed to include the notices required by the FDCPA with these interrogatories." (Am. Compl. ¶19.) (Velazquez does not appear to be claiming a violation of § 1692e(11) or § 1692g in LVNV's lawsuit against him.) LVNV argues that it did not violate the disclosure requirements for two reasons: first, the interrogatories were served on Hauk by LVNV's counsel, not by LVNV itself, and thus "cannot be treated as a communication initiated by LVNV"; and second, an interrogatory should be considered a "formal pleading" and thus exempt from §§ 1692e(11) and 1692g(a). (Def.'s Mem. at 7.)

With respect to the first argument, it is far from clear that LVNV cannot be held liable for the actions of its attorneys. In general, an attorney is the agent of his or her client, and a client will be held responsible for the actions the attorney takes within the scope of the client's authorization. It is unlikely Congress intended to permit a debt collector to avoid liability for violations of the FDCPA disclosure requirements simply by hiring a law firm to make court filings that would otherwise be subject to the statute. Nonetheless, the court will not definitively resolve this question at this time, given that other FDCPA claims will be going forward. To the extent LVNV continues to believe that hiring counsel to bring suit and serve interrogatories immunized it from the FDCPA disclosure requirements, the issue will be resolved on summary judgment.

With respect to the second argument, the Fourth Circuit has expressly reserved decision on whether interrogatories should be considered "formal pleadings" under the FDCPA. While in *Sayyed v. Wolpoff & Abramson, LLP*, Judge Messitte initially concluded that interrogatories are "formal pleadings," the Fourth Circuit reversed and remanded on other grounds, expressing no opinion on the issue. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 235 n.2 (4th Cir. 2007); *see also Sayyed v. Wolpoff & Abramson, LLP*, 2010 WL 3313888, *4 n.4 (D. Md. Aug. 20, 2010) (deciding the case on remand on other grounds). LVNV has cited no authority, and the court has not found any, for the proposition that an interrogatory is exempt from §§ 1692e(11) and 1692g. At this stage, the court rejects the argument, and holds that an interrogatory is not automatically exempt from § 1692e(11) as a "formal pleading made in connection with a legal action" or from § 1692g as a "formal pleading in a civil action." Rule 7(a) of the Federal Rules of Civil Procedure lists the "pleadings" that are allowed in a federal case: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Interrogatories do not fall into any of these categories. While Rule 7(a) does not provide a definitive interpretation of the FDCPA's reference to a "formal pleading," it is a persuasive indication that Congress did not intend for all documents filed in connection with a lawsuit to fall within the formal pleading exceptions.

For these reasons, defendant's motion to dismiss the claims under §§ 1692e(11) and 1692g will be denied.

### C. Unlawful threats – 15 U.S.C. § 1692e(5)

As noted above, "a person must have a license whenever the person does business as a collection agency in [Maryland]." Md. Code Ann., Bus. Reg. § 7-301(a). If a person does not

12

have a license but "knowingly and willfully do[es] business as a collection agency in the State," the person is guilty of a misdemeanor, punishable by "a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both." *Id.* § 7-401. The plaintiffs allege that by filing lawsuits to collect debts without being licensed as a collection agency, LVNV was not only using "unfair or unconscionable means to collect or attempt to collect any debt" as prohibited by 15 U.S.C. § 1692f, discussed above, but was also making a "threat to take [an] action that cannot legally be taken" in violation of § 1692e(5).[2] To prevail on this claim, the plaintiffs must establish that, first, filing a lawsuit and serving interrogatories in connection with the lawsuit constitute "threat[s] to take [unlawful] action," rather than unlawful actions themselves, and second, that failing to hold a state license renders the filing of the lawsuit "action that cannot legally be taken." These are both close questions, ones the court will not resolve at this time.

LVNV argues that it did not make a "threat to take [unlawful] action" because, irrespective of whether it was permitted to file the state court lawsuits, it did not "threaten" to sue Hauk and Velazquez, but rather actually filed suit; therefore, LVNV argues, it cannot be liable for a "threat to take any action that cannot legally be taken." Courts have rejected claims under § 1692e(5) based upon allegedly illegal conduct that is not threatened, but rather actually undertaken. *See, e.g.*, *Delawder v. Platinum Financial Services Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005) (dismissing § 1692e(5) claim because defendants "did not *threaten* to take that action, but actually took it by filing the complaint") (emphasis in original); *Wehrheim v. Secrest*, 2002 WL 31242783, *5 (S.D. Ind., Aug. 16, 2002) (granting summary judgment to defendant debt collector on § 1692e(5) claim where debt collector actually filed allegedly illegal suit to

---

[2] The section also prohibits debt collectors from threatening to take an action "that is not intended to be taken." The plaintiffs do not allege that LVNV threatened action it did not intend to take, but rather action it was not legally permitted to take. Therefore, the part of § 1692e(5) referring to action "that is not intended to be taken" is not at issue here.

13

recover on debt). Nonetheless, plaintiffs argue those cases are in error, because when LVNV filed the state court complaints, it was "threatening" to acquire a judgment against them.

LVNV also argues that it did not violate § 1692e(5) because, even if LVNV was a "collection agency" under Maryland law, and even though it did not have a license, it did not violate the Maryland licensing statute because, according to the Maryland Department of Labor, Licensing and Regulation ("DLLR"), the state agency charged with enforcing the licensing statute, entities like LVNV are not required to be licensed. A 2007 letter issued by Kelly Mack, "Financial Examiner Lead" of the DLLR's Regulatory Policy Unit, stated that where a person "purchases debts in default but is not directly engaged in the collection of these purchased debts," the person is a "passive debt buyer" and is "not required to obtain a collection agency license." (Def.'s Mem., Ex. 5.) LVNV argues that the Mack letter reflects the correct interpretation of the Maryland state licensing law, and because LVNV is not required to be licensed, it was not prohibited from suing Hauk and Velazquez to collect the debt; therefore its actions were not ones that could not "legally be taken." (Def.'s Mem. at 12-13.) Plaintiffs respond by arguing that the Mack Letter conflicts with the statute, is not authoritative, and moreover is irrelevant because it "does not address litigation." (Pl.'s Mem. at 15.)

The court will not express an opinion on these questions under § 1692e(5) at this time. The other FDCPA claims will be proceeding for the reasons discussed above. If, at a later stage, plaintiffs continue to allege that LVNV violated § 1692e(5), these arguments can be resolved on summary judgment. The motion to dismiss the § 1692e(5) claim therefore will be denied without prejudice.

## IV. Injunctive and declaratory relief (Count I)

Count I requests "class declaratory judgment and injunctive relief" in the form of disgorgement of "all amounts that [LVNV] has obtained while acting illegally as a debt collection agency without a license" as well as other "appropriate injunctive relief to prevent further violations of law, including a preliminary and permanent injunction." (Am. Compl. ¶53.) LVNV argues that the count should be dismissed because declaratory and injunctive relief is not available under the FDCPA, MCDCA or MCPA. Plaintiffs acknowledge that those remedies may not be available under those statutes, but rather contend that the unavailability of such relief under those statutes is irrelevant, because declaratory relief is available under 28 U.S.C. § 2201 and Md. Code Ann., Cts. & Jud. Proc., § 3-406, and injunctive relief is available under 28 U.S.C. § 2202 and Maryland Rule 15-501, *et seq.*

The principal deficiency with the plaintiffs' argument is that the amended complaint does not cite any federal or state statutes that independently entitle the plaintiffs to declaratory and injunctive relief. Moreover, as counsel conceded at oral argument, much of their request for equitable relief is now moot. Subsequent to the filing of this lawsuit, LVNV applied for and received a license as a debt collector from the Maryland DLLR. Therefore, the request for an injunction barring LVNV from conducting debt collection activities until it receives a license is moot. Accordingly, the motion to dismiss Count I will be granted.

## V. State law claims

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md. Code Ann., Com. Law § 13-301. One set of practices expressly designated as "unfair or deceptive trade practices" is any violation of a provision of the Maryland Consumer Debt Collection Act ("MCDCA"). *Id.* § 13-301(14)(iii). The MCDCA, in turn, provides that a

15

"person collecting or attempting to collect an alleged debt arising out of a consumer transaction," *id.* § 14-201(b) (defining "collector"), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* § 14-202(8). Plaintiffs allege that LVNV violated these two interrelated statutes. Each statute creates a private right of action for violations of its provisions. *See id.* § 13-408(a) (creating a cause of action for "injury or loss" sustained "as the result of a practice prohibited by [the MCPA]"); *id.* § 14-203 (providing that a "collector" who violates the MCDCA "is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury").

LVNV argues the state law claims should be dismissed in part because the plaintiffs have failed to allege cognizable "injury or loss" under the MCPA or "damages" under the MCDCA. Plaintiffs allege the following damages: attorneys' fees expended in defending the state court actions, damage to credit, and emotional damages. (Am. Compl. ¶26.) LVNV concedes that damage to credit and emotional damages are cognizable damages under the state statutes. That concession alone is sufficient to deny the motion to dismiss the state law claims. Nonetheless, LVNV argues that "to the extent" the plaintiffs' state law claims are based on attorney fees incurred in defending the state court actions, the claims are not viable. (Def.'s Mem. at 11.)

Maryland courts recognize that attorneys' fees are recoverable as actual damages in certain circumstances, namely "where the wrongful acts of the defendant [have] involved the plaintiff in litigation with others, or placed him in such relation with others as make it necessary to incur expense to protect his interest." *Montgomery Village Associates v. Mark*, 620 A.2d 975, 979 (Md. Ct. Spec. App. 1993) (quoting *McGaw v. Acker, Merrall & Condit Co.*, 73 A. 731, 734 (Md. 1909)). For example, a plaintiff in a malicious prosecution action is entitled to recover

16

attorneys' fees expended in defending the unwarranted prosecution. *Tully v. Dasher*, 244 A.2d 207, 217 (Md. 1968). Here, the plaintiffs seek to recover the cost of retaining attorneys to defend themselves in the state court actions, which they allege LVNV was prohibited from bringing and therefore consitututed an "attempt . . . to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). According to the plaintiffs' allegations, accepted as true for the purposes of the motion to dismiss, LVNV's "wrongful acts . . . involved the plaintiff[s] in litigation with others," which made it "necessary to incur expense to protect [their] interest[s]." *McGaw*, 73 A. at 734. Thus, if the plaintiffs succeed in proving that LVNV violated the MCPA and/or the MCDCA when it filed lawsuits against them, and that the expenditure of attorneys' fees to defend themselves in those actions was "reasonable and necessary," *id.*, they may be entitled to recover those costs as actual damages.

Accordingly, LVNV's motion to dismiss Counts II and III will be denied.

## **CONCLUSION**

For the foregoing reasons, plaintiffs have stated claims on which relief can be granted on all counts except Count I. A separate order follows.

<u>November 5, 2010</u>         <u>/s/</u>
Date        Catherine C. Blake
       United States District Judge